No. 48,673

STATE OF KANSAS, *Appellee,* v. LEWIS MCDONALD, *Appellant.*

(565 P.2d 267)

Opinion filed June 11, 1977.

*B. A. Lightfoot,* of Jetmore, argued the cause, and was on the brief for the appellant.

*Jerry G. Larson,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Lewis McDonald brings this appeal from the Pawnee District Court where he was convicted of battery against a law enforcement officer, Dennis Hunt, in violation of K.S.A. 21-3413. He was sentenced to six months in jail and a fine of $500.

McDonald contends that the evidence establishes as a matter of law and fact that Hunt was not a "law enforcement officer" and that the court erred (1) in refusing to receive a "learned treatise" in evidence; (2) in refusing to give the jury an instruction on involuntary intoxication; (3) in denying defendant's motion for a new trial on the grounds of prejudicial pretrial publicity; and (4) in refusing to permit counsel to make inquiry of the jurors with respect to prejudicial pretrial publicity.

Hunt, a part-time police officer for the city of Larned, was on duty, working a seven-hour shift, during the early morning hours of February 15, 1976. He was in full uniform. McDonald failed to stop his car at a stop sign. Hunt followed, stopped McDonald, and prepared to write a citation. McDonald got out of his car and threatened Hunt. Hunt sprayed McDonald in the face with Mace. McDonald promptly kicked Hunt in the stomach. It is this kick which forms the basis of the charge.

Defendant contends that because Hunt was only a part-time policeman, he is not a "law enforcement officer." Defendant relies upon the definition contained in K.S.A. 1976 Supp. 74-5602 (*e*). That statute is a part of the Kansas Law Enforcement Training Center and Advisory Commission Act, K.S.A. 74-5601, *et seq.,* and its application is limited to that act. The controlling statute here is K.S.A. 1976 Supp. 21-3110 (10), which defines a law enforcement officer as:

". . . [A]ny person who by virtue of his or her office or public employment is vested by law with a duty to maintain public order or to make arrests for crimes, whether that duty extends to all crimes or is limited to specific crimes."

Defendant also complains that Hunt was originally hired by the chief of police and not by the city manager pursuant to K.S.A. 12-1014. Hunt was wearing a city police uniform and badge; he was driving a city vehicle, ordinarily driven by the city manager; he had been doing this part-time police work for some time; and presumably he was paid by the city. Though his original employment, some months before the incident in question, may have been irregular and not in strict conformity with the cited statute, we have no hesitancy in holding that Hunt was a "law enforcement officer" under the facts before us.

Defendant sought to introduce in evidence a portion of the Merck Manual, but he produced no witnesses to authenticate the manual or attest to its reliability. Apparently the trial judge was not sufficiently familiar with the publication to take judicial notice of it, and he declined to do so.

K.S.A. 60-460 (*cc*) provides in substance that statements in published treatises, offered to prove the truth of a matter stated therein, are exceptions to the hearsay rule and may be received in evidence:

". . . [I]f the judge takes judicial notice, or a witness expert in the subject testifies, that the treatise . . . is a reliable authority in the subject."

As we said in *Zimmer v. State,* 206 Kan. 304, 309, 477 P. 2d 971:

"Mere publication does not *ipso facto* render a work admissible as independent substantive evidence. Such a work becomes admissible when a proper foundation has been laid—establishment of its reliability either by means of judicial notice being taken or the attestation of an expert witness. . . . We hold the determination of reliability requisite to admission into evidence of learned treatises rests in the sound discretion of the trial court."

Here no foundation was laid, and the court declined to admit the proffered portion of the manual into evidence. We find no abuse of discretion.

McDonald claims the court erred in failing to give a requested instruction on involuntary intoxication. The basis of this claim is his contention that Mace was applied to him involuntarily, and that he did not know what he was doing thereafter. This requires a determination of whether Mace can cause intoxication. There is nothing in the record to indicate this is so, and thus no error in the court's ruling is shown in this regard.

Next we turn to the final claims of error relating to prejudicial pretrial publicity. About two weeks prior to the commencement of defendant's jury trial, copies of a two-page typewritten document were distributed to places of business and to residences in Larned. These pamphlets were exceedingly vituperative publications which could well inflame the community and engender hatred towards the defendant and towards his father, who testified as a defense witness. McDonald's attorney was not a local resident, and did not learn of this publication until the case had been submitted and the jury was deliberating.

The motion for new trial was based in part on the existence of this prejudicial pretrial publicity. Upon oral argument, counsel informed the court that he had not interviewed any of the jurors, feeling that he should first secure the consent of the trial judge before doing so. He asked leave for both trial counsel to contact the trial jurors in order to determine "the existence or possible non-existence of prejudicial pretrial publicity." The trial court denied the motion, refused any type of examination of the trial jurors, and expressed its opinion that the publication had absolutely no effect. This we hold was error.

K.S.A. 60-441 prevents inquiry into the mental processes of jurors. *State v. Schroeder,* 201 Kan. 811, 822, 443 P. 2d 284, and *State v. Morgan,* 207 Kan. 581, 485 P. 2d 1371. By its terms the statute prohibits the receipt of evidence to show the *effect* of any statement upon the mind of a juror. But whether the jurors had read the pamphlet, whether they knew of its existence, whether it was discussed in the jury room—these are matters which are highly relevant and inquiry into these and like matters are not proscribed by the statute.

In our judgment counsel should have been granted leave to

interview the trial jurors, and the trial court abused its discretion in refusing counsel permission to do so. While there is nothing in our law to prohibit counsel from interviewing jurors after the conclusion of trial, leave of court is required before jurors may be called for hearings on posttrial motions. Supreme Court Rule No. 181 (220 Kan. LXVIII). We think counsel pursued a proper course in seeking permission of the court to interview jurors. When in doubt in an area such as this, counsel cannot be faulted for seeking guidance from the court.

Upon the record before us, we cannot say that substantial justice has been done insofar as the disposition of defendant's motion for a new trial is concerned. K.S.A. 60-2105. Accordingly, the order of the trial court overruling the motion for a new trial is reversed and the cause is remanded to the trial court with directions to set aside its order overruling the motion for a new trial, to grant counsel leave to interview the trial jurors, and to grant counsel an opportunity to present relevant evidence, if any, upon the hearing of the motion for a new trial.

In all other respects, the judgment below is affirmed.